UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAVID WILLIAMS** | * | **CIVIL ACTION NO. 09-7375** |
| **VERSUS** | * | **SECTION "C"(2)** |
| **TRIPLE C. ENTERPRISE, INC. OF LOUISIANA, C & G WELDING, INC. AND INTERNATIONAL OFFSHORE SERVICES, LLC** | * | **HON. HELEN BERRIGAN** |
| | * | **MAG. JOSEPH C. WILKINSON, JR.** |

## ORDER AND REASONS[1]

Before the Court is a Motion for Summary Judgment by the defendants, Manson Gulf, LLC ("Manson"), International Construction Group, LLC ("ICG"), and Lexington Insurance Company ("Lexington") (collectively, "Defendants"). Rec. Doc. 188. Defendants allege that the plaintiff, David Williams ("Plaintiff"), was not a "seaman" at the time of his injuries according to the Jones Act. *Id.* Plaintiff opposes the Motion for Summary Judgment alleging that there are genuine issues of material fact and that a jury could find that Plaintiff was a "seaman" under the act. Rec. Doc. 196. Having considered the memoranda of counsel, the record, and the applicable law, the Court **DENIES** the Motion for Summary Judgment for the following reasons.

---

[1] Adreanne Stephenson, a second year law student at the University of Notre Dame, aided in preparing this order.

1

**FACTUAL BACKGROUND**

Plaintiff filed suit under the Jones Act, 46 U.S.C. § 688, the General Maritime Law and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Rec. Doc. 1 at ¶¶ 4-5. He claimed he was injured on two occasions while working as a contract welder employed by C & G Welding Service. Rec. Doc. 1 at ¶¶ 4-5; Rec. Doc. 29 at ¶ 1. His first claim alleges that on May 30, 2009, he injured his left shoulder on the D/B Wotan, a barge owned by Manson, while passing groceries from man-to-man with a group of workers. Rec. Doc. 117 at 2. Specifically, Plaintiff alleges that he was injured when Augustine Betanzos ("Betanzos"), a contract rigger performing work for Manson pursuant to the Marine Master Work Contract ("Contract"), tossed him a five gallon milk container. Rec. Doc. 117 at 2. Defendants in this claim are Manson, the D/B Wotan barge owner; Lexington, Manson's insurer; and Ocean Marine Operators, L.L.C., Betanzos employer.

Plaintiff's second claim alleges that on October 2, 2009 while working aboard the IOS 800–a vessel owned and operated by ICG, Plaintiff tripped on the base of a staircase while carrying equipment and injured his back and neck. Rec. Doc. 100-1 at 2; Rec. Doc. 126-6 at 33. Plaintiff was building shelves in the locker room of the vessel since the welding crew could not weld due to bad weather. Rec. Doc. 188-3 at 12. Defendants in this claim are ICG and Lexington, ICG's insurer. Plaintiff's employers, C & G Welding Service and Triple C Enterprise of Louisiana along with C & G's insurer–Lloyd's Underwriters, Ltd., were dismissed with prejudice pursuant to a settlement. Rec. Doc. 81. Accordingly, the remaining Defendants in this suit are Ocean Marine Operators, L.L.C., Manson, Lexington, and ICG.

## LAW AND ANALYSIS

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co*., 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, the defendant must show an absence of factual support for one or more elements essential to the plaintiff's claims. *Buford v. Cardinal Servs, Inc.*, 801 So.2d 1269, 1274 (La. Ct. App. 2001). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on unsubstantiated assertions and conclusory allegations. *See Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994). A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment. *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x. 439, 443 (5th Cir. 2011).

Under the Jones Act, the determination of seaman status is a mixed question of law and fact. *Buford v. Cardinal Servs, Inc.*, 801 So.2d 1269, 1274 (La. Ct. App. 2001). By viewing the totality of the circumstances that surround an individual's employment, the analysis pertaining to seaman status may include a multiplicity of factors. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 370 (1995); *See also Foster v. Subsea Int'l, Inc.*, 101 F. Supp. 2d 454, 457 (1998). If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a "member of the crew" and therefore a seaman, it is a question for the jury. *Chandris,* 515 U.S. at 369 (citing *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

Under the *Chandris* test, an employee is considered a Jones Act "seaman" if he 1) *contributed to the function* of the vessel or to the *accomplishment of its mission* and 2) had a *connection* to a vessel *in navigation* that is *substantial* in terms of both its *duration* and its *nature*. 515 U.S. at 368 (emphasis added). As long as the employee performed a significant part of his work with some degree of regularity and continuity on board the vessel(s), the test for seaman status will be satisfied. *In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 681 (W.D. La. 2008). In applying the fact-intensive *Chandris* test, all relevant circumstances of the employee's situation must be considered and summary judgment is appropriate "where the facts and the law will reasonably support *only* one conclusion." *Schultz v. Louisiana Dock Company*, 94 F. Supp. 2d 746, 749 (E.D. La. 2000) (emphasis added).

The first prong, requiring an employee's contribution to the function or mission of the vessel, is a broad, fact intensive threshold inquiry and includes "all who work at sea in the service of a ship." *Buford*, 801 So.2d at 1274 (quoting *Wilander*, 498 U.S. at 354). It is neither necessary for the maritime worker to aid in navigation nor to participate in actual transportation

4

of the vessel to satisfy this requirement. *Id.* at 1274. The Louisiana Supreme Court has held that a claimant who performed maintenance and repair work on a vessel satisfies the first prong. *Id.* at 1275. The plaintiff in *Buford* cleaned, lubricated, and painted the work area and platform on the vessels. *Id.* Since a jury could find that the plaintiff's duties contributed to the vessels' mission, the court reversed and set aside the trial court's grant of summary judgment. *Id.* at 1275-76. Generally, the first element of the test is easily satisfied and the inquiry of whether an employee is a seaman often turns on the second element of the *Chandris* test. *See Richard v. Mike Hooks, Inc.*, 799 So.2d 462, 466 (La. 2001); *Schultz*, 94 F. Supp. 2d at 749.

In the present case, there is evidence that Plaintiff may satisfy the first element, thus this factor weighs against summary judgment. While serving aboard D/B Wotan and the IOS 800 as a contract welder, Plaintiff removed offshore structures, installed new platforms, unloaded groceries from supply vessels, built shelves, and engaged in salvage work. Rec. Doc. 196-3 at 1-2; Rec. Doc. 188-3 at 22. Installation and salvage work are synonymous to maintenance and repair work on a vessel and a jury could find that these duties satisfy the first prong. Since the threshold is low for the first element, Plaintiff's evidence is sufficient to establish the burden of proof for trial.

The second prong of the *Chandris* test, which requires that an employee have a substantial connection to a vessel in terms of both its duration and its nature, is most important and contains a narrower definition of seaman status. *See Buford*, 801 So.2d at 1274; *See also, Richard v. Mike Hooks, Inc.*, 799 So.2d 462, 465 (La. 2001). Congress intended for the second requirement to separate the sea-based maritime employees who are entitled to protections under the Jones Act from land-based workers, whose transitory or sporadic connections to a vessel do

not grant them protection. *Chandris*, 515 U.S. at 368.

The ultimate inquiry into the nature of a worker's activities is whether he is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. *Chandris*, 515 U.S. at 370. The nature of an employee's work must concentrate on whether his duties take him to sea and expose him to the perils thereof. *Buford*, 801 So.2d at 1276 (citing *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997)); *See also, Chandris*, 515 U.S. at 370. In *Buford*, the Court found that there was a genuine issue of material fact as to whether the nature of the plaintiff's work was substantially connected to the vessel since the wireline operator performed many of his duties out at sea. *Id.* at 1276. This fact could strengthen the totality of the circumstances in favor of granting seaman status, so the Court did not grant summary judgment. *Id.; Contra*, *Schultz v. Louisiana Dock Company*, 94 F. Supp. 2d 746, 747, 750, 751 (E.D. La. 2000) (summary judgment was granted to the defendants because the plaintiff welder slept and ate at home; never traveled or participated in any voyages; and never acted as a deck hand on the vessels; thus, the nature of his work demonstrated that he was a land-based employee who did not face the perils of the sea).

In the present case, a jury could find that Plaintiff was exposed to the perils of the sea as a "member of the crew" on both the D/B Wotan and the IOS 800. According to the deposition testimony of Manson's operations manager, E. J. Goubert ("Goubert), Manson considered welders a part of the "crew." Rec. Doc. 196-4 at 16-17; Rec. Doc. 196 at 7. Moreover, the depositions of Goubert and Plaintiff stated that when personnel on the D/B Wotan and the IOS 800 were not busy or could not perform their contracted jobs due to bad weather, the Manson or ICG welding foremen would find jobs, such as unloading groceries and building shelves, for the

6

crew members and the welders. Rec. Doc. 196-4 at 16-17; Rec. Doc. 188-3 at 6-7, 12. A factfinder could find that the nature of Plaintiff's activities, sleeping and eating on the barges, being placed out at sea to perform installation and salvage work, participating in activities with the workers aboard, and acting as a deck hand loading groceries and building shelves, could demonstrate that he was a sea-based maritime employee rather than a land-based worker. Rec. Doc. 196-3 at 1; Rec. Doc. 188-3 at 22.

Moreover, there is evidence that Plaintiff faced the perils of the sea while aboard both barges. While aboard the IOS, the barges experienced bad weather which may have caused Plaintiff to lose his balance on the staircase while carrying equipment from the locker room. Rec. Doc. 188-3 at 16. Plaintiff also mentioned that he felt unsafe when the welding foreman instructed them to weld during a storm. Rec. Doc. 188-3 at 16. These conditions may contribute to the perilous nature of Plaintiff's work therefore evidence supporting this element weigh against summary judgment.

Generally, the Fifth Circuit's rule regarding duration states that a worker who spends less than approximately 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman. *Chandris*, 515 U.S. at 371. The employee must serve on an identifiable group of vessels that are subject to common ownership or control. *Buford*, 801 So.2d at 1276. However, the 30 percent figure only serves as a guideline and departure is justified in appropriate cases. *Id.* If a claimant does not reach the 30 percent directive, seaman status is not necessarily defeated, because the Jones Act still protects those employees who face special hazards and disadvantages of the sea in ships. *Buford*, 801 So.2d at 1278; *Chandris*, 515 U.S. at 370; *See also, Foster*, 101 F. Supp. 2d at 457. For example, summary judgment was denied in

*Buford* even though the defendants alleged the 30 percent threshold was not met. The plaintiff only performed wireline services on three vessels owned by the defendant, constituting 27.3 percent of the plaintiff's employment. *Id.* at 1277. However, the plaintiff also worked on two other vessels owned by the defendants which augmented the 27.3 percent to 42 percent. *Id.* The fact that the plaintiff may have spent 42 percent of his employment working aboard five vessels owned by the defendant created a genuine issue of material fact so the Court denied summary judgment *Id.* Similarly, the defendants in *Foster* were denied summary judgment because the Court could not conclude as a matter of law that working between ten days and two and a half weeks was too short for the welder plaintiff to satisfy the durational requirement. 101 F. Supp. 2d at 457-58 (citing *Foulk v. Donjon Marine Co.*, Inc., 144 F.3d 252 (3rd Cir. 1998)) (held that a ten day term of employment aboard a vessel was sufficient to create a genuine issue of material fact to whether a plaintiff was a seaman).

In the present case, a fact-finder could find that Plaintiff satisfies the duration requirement and thus summary judgment is improper. According to Plaintiff's payroll records, 44.47 percent of his employment was spent on Manson vessels. Rec. Doc. 188-5 at 7; Rec. Doc. 188-3 at 6. This is well over the 30 percent threshold, so a fact-finder could conclude that he was a seaman. According to Defendants, Plaintiff allegedly spent 18.33 percent of his employment on ICG vessels which does not meet the threshold requirement. Rec. Doc. 188-5 at 7. However, Plaintiff claims that he spent 100 percent of his time working for Manson aboard the D/B Wotan and 100 percent of his time working for ICG aboard the IOS 800. Rec. Doc. 196 at 21; Rec. Doc. 196-3 at 1-2; Rec. Doc. 196-10 at 3. It is unclear whether the hours worked for Manson and ICG include land projects and since the calculation contributes to the totality of the

8

circumstances, the Court does not have sufficient evidence to rule on this as a matter of law. Moreover, Plaintiff was aboard the D/B Wotan for nine days and the IOS 800 approximately eight days before his injuries. Rec. Doc. 188-3 at 12; Rec. Doc. 188-5 at 7. Since Plaintiff's day count is extremely close to the ten days in *Foster*, it is sufficient to create a genuine issue of material fact. Since Plaintiff provides sufficient evidence to meet the burden of proof at trial, this element weighs against summary judgment.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment is **DENIED.** Rec. Doc. 188.

New Orleans, Louisiana, this 1st day of August, 2012.

							_____
							**HELEN G. BERRIGAN**
							**UNITED STATES DISTRICT JUDGE**